## 2838.  HOUSER *v.* SAVANNAH ELECTRIC COMPANY.

1. When, in an action at law, one party seeks to enforce against the other, either offensively or defensively, a contract purporting to have been made by the latter, he may show, without resort to equity, that the contract was voidable because of fraud, and that, with reasonable promptness after discovery of the fraud, he offered to rescind, and tendered restoration.

2. The question of fraud or no fraud, as presented by the facts stated in the plaintiff's amendment to his pleading, was a jury question. It was likewise a jury question as to whether the offer to rescind had been made with reasonable promptness.

3. When it appears from the bill of exceptions that the plaintiff introduced evidence, and that a motion for nonsuit was overruled, that the defendant introduced in evidence a contract of release from liability, and the plaintiff offered, in rebuttal, to show that the release was procured by fraud and that the contract had been rescinded therefor, and the court declined to allow the proof, for lack of pleading, and the plaintiff then tendered pleading setting up the fraud, which was rejected by the court, and that thereupon a verdict for the defendant was directed by the court, *held,* that, upon this court's determining that the trial court erred in rejecting the pleading and proof as to the fraudulent procurement of the release, the judgment will be reversed because of the direction of the verdict, although the record is silent as to the evidence introduced by the plaintiff in support of his case in chief; for if it was insufficient to support a verdict in his favor, the court should have terminated the case by nonsuit, and not by direction of a verdict.

DECIDED SEPTEMBER 30, 1911.

Action for damages; from city court of Savannah—Judge Davis Freeman.  September 13, 1910.

*O'Byrne, Hartridge & Wright,* for plaintiff.

*Osborne & Lawrence,* for defendant.

RUSSELL, J.  Mrs. Houser brought suit against the Savannah Electric Company for the homicide of her husband.  Among other defenses the electric company pleaded that after Houser's death, his widow received from the Savannah Electric Benefit Association a certain sum of money and executed a receipt therefor, which operated not only to release the benefit association from liability for death benefits, under a fraternal insurance arrangement which was transacted through it, but also to release the electric company from liability for the homicide.  The Savannah Electric Benefit Association was a relief association having an intermediate connection between the electric company and its employees, such as frequently exists between other railroad companies and their employees, and such as was discussed in the recent case of *Washington* v. *A. C. L.*

*Ry. Co.,* 136 *Ga.* 638 (71 S. E. 1066). However, the transaction in the present case took place prior to the adoption of the statute now embodied in the Civil Code (1910), § 2785, so that under the rulings in the *Petty* case, 109 *Ga.* 666 (35 S. E. 82), this release, if valid, would have been a complete defense to the plaintiff's action. After the plaintiff had introduced her evidence and had closed her case, the defendant introduced the release; whereupon the plaintiff offered evidence tending to show that the release was procured by fraudulent representation and concealment of facts. The court sustained objections to the testimony, on the ground that there was no pleading to authorize it. The plaintiff then tendered a supplemental pleading, in the nature of an amendment to the petition, setting up that the contract was void because procured by certain acts of fraud, which were detailed. The court rejected this amendment, on the ground that the suit was proceeding in a court without any equitable jurisdiction, and that the contract of release could not be set aside without the court's exercising affirmative equitable relief. The amendment and the testimony in support thereof having been rejected, the court directed the verdict for the defendant. This is a somewhat meager statement of the facts, but it is sufficient to indicate in a general way the points which are to be decided and which to our minds control the case.

1. The court ought to have allowed the amendment. When, in an action at law, one of the parties seeks to enforce against the other, either offensively or defensively, a contract purporting to have been made by the latter, he may show, without resort to equity, that the contract was voidable because of fraud, and that, with reasonable promptness after discovery of the fraud, he offered to rescind, and tendered restoration. Some courts make the distinction as to whether the fraud relates to the physical procurement of the paper or to the gaining of the consent of the contracting party. We think that the uniform practice in this State justifies us in holding that this difference does not apply in our jurisdiction. For example, if a promissory note is given for the alleged purchase-price of property, and the holder thereof sues on it in a court of law in a strictly legal action, the defendant may plead that the contract was procured by fraudulent representations as to the property or as to the terms of the contract, or that his consent to the contract was in any other way fraudulently procured, and that upon

discovering the fraud he promptly tendered restoration of the status and rescinded or offered to rescind so far as he was able so to do. We have never heard it questioned that such a plea would be a valid defense in such a case, though the court in which the suit is pending has no equitable jurisdiction other than that quasi-equitable jurisdiction which all our courts have of entertaining equitable defenses not calling for affirmative equitable relief. That presents a case of an attempt to enforce the contract offensively. Now, here is a case in which the attempt is to enforce the contract defensively. It is well recognized in our system of pleading and practice that whenever in an action at law the defendant offers an affirmative defense, the plaintiff may, by an amendment to his petition, in the nature of a replication, set up anything in avoidance of the matter pleaded which he could have set up if the positions of the parties to the suit were reversed,—that is, can defend against the matter pleaded by the defendant just as if the defendant as a plaintiff had sued him thereon. Of course, there are cases where the nature and form of the attack upon a contract alleged to have been fraudulently procured is such that affirmative equitable relief is required, and in such cases the attacking party must institute his attack in a court having jurisdiction to grant affirmative equitable relief,—that is, in a superior court. For example, a city court, being without sufficient jurisdiction in equity, could not entertain a suit brought to set aside a formal contract on the ground that it was procured by fraud, but our courts have long recognized the very cardinal and essential difference between setting aside a contract for fraud and avoiding it defensively on a similar ground. For instance, a deed made to secure a usurious debt is void. A party may defend against it without resort to equity, but if he would have the deed set aside or cancelled as a cloud on his title, he would have to go into a superior court—the defense in the one case requiring no affirmative equitable interposition, and the relief in the other case requiring it.

The objection, urged by able counsel for the defendant in error, that the benefit association with whom the contract of relief was actually made was not a party to the present case, and that this association was a necessary party to any attack made upon the contract for fraud, is not well taken. If Mrs. Houser had undertaken to set aside the release or to have it cancelled, then the

relief association as well as the electric company would have been a necessary party to the suit. But not so in this case, where she merely sets up the fraud as a legal reason why the contract should not be enforced against her to the destruction of her legal cause of action. For instance, suppose a note is made payable to A, and A transfers it to B (not an innocent purchaser), and B sues C (the maker) on it, would it be necessary for C, before he could set up the defense that the note was procured by fraud or fraudulent misrepresentation, to have A made a party to the suit? We do not understand that any such rule exists. If a principal sues on a contract taken in the name of his agent, does the defendant, who seeks to avoid the contract for fraud, have to make the agent a party? To allow a railroad company to take direct advantage of a contract made between other persons, to the extent of asserting it offensively or defensively in a suit, is a departure from the general rule; for, ordinarily, a right of action or defense under a contract exists only between the immediate parties thereto, and the beneficiary can not enforce the contract except in the name of the party to the contract, suing for his use. However, there is a form of contract as to which the beneficiary may sue directly; and the analogy between the situation there and the situation here is such as to present a fair comparison. We refer to a contract of life insurance. In that case the beneficiary can sue in his own name. Suppose he does sue and the company defends against the contract on the ground of fraud, is it necessary that the insured (or his personal representative, for generally the insured is dead at the time the suit is brought) should be a party before the defense can be entertained?

2. It is contended that the facts set up in the amendment to the petition did not show such a state of fraud as to constitute a defense against the contract of release. It will not be necessary for us to set out the facts relied on. It will be sufficient to say that in our opinion such a state of facts is alleged as to make the question of fraud or no fraud a question for the jury. It is further contended that the petition shows on its face that the offer of restoration which is essential to the rescission of a contract was not seasonably made. The release was signed on June 5, 1909, and tender back of the money which she had received from the relief association was made on January 12, 1910. Under all the facts, we think that it was a jury question as to whether the tender was

made with reasonable promptness or not. It is said in the argument (though this does not appear from the pleading which was rejected) that as early as June 14, 1909, the electric company notified the plaintiff that her claim against the company had been settled by her accepting the insurance money from the relief association. It should be kept in mind that this letter was mere notice that the company claimed that the payment of insurance money had released it, but was not necessarily notice of the actual existence (undisclosed to the plaintiff up to that time) of the by-laws of the benefit association under which such a release from liability could be successfully asserted by the company, and the plaintiff was entitled to a reasonable time within which to investigate the validity of the company's claim before she was required to tender back to the benefit association money to which she was apparently entitled as insurance on her husband's life. The duty of prompt restoration is not so imperative as to the element of promptness as to preclude opportunity for investigation as to one's legal rights in the matter.

3. Counsel for the defendant in error makes the point that the judgment should in any event be affirmed, because the plaintiff did not bring up the evidence introduced before the jury for the purpose of showing the defendant's liability for the homicide of the plaintiff's husband. The bill of exceptions recites that the plaintiff introduced evidence (without setting it forth); that the court overruled a motion for a nonsuit; that the defendant then introduced the release; that certain evidence tending to show fraud in the procurement of the release was offered and rejected for lack of pleading; that the pleading was then tendered and rejected, and that thereupon the court directed a verdict in the defendant's favor. It is not necessary for us to have this evidence as to the plaintiff's case in chief before us, and counsel for the plaintiff in error very properly left it out of the record. The best, the most effectual way to present a point is to submit it in its bold outline, without the incumbrance of other matter not material to a consideration of the legal proposition involved. A court has a right to direct a verdict for the defendant only when the plaintiff has made a prima facie case and the defendant's proof has overcome that case so fully as to leave no question for submission to the jury. If the plaintiff fails to make out a case of prima facie liability, the

case should terminate in a nonsuit, and not in the direction of a verdict against him; and if the court does direct the verdict, the judgment will be reversed. *Proctor* v. *Blakely Oil Co.*, 128 *Ga.* 606 (57 S. E. 879). So that it is immaterial to the consideration of the question here presented whether the plaintiff's evidence was or was not sufficient to make out a case of prima facie liability; in either event the court ought not to have directed a verdict for the defendant. If the defendant in error had desired to raise any question as to the sufficiency of the plaintiff's evidence to withstand nonsuit, he could have raised that question by cross-bill of exceptions.　　　　　　　　　*Judgment reversed.*